IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00389-RBJ

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**3. JERAMYAH GONZALEZ, a/k/a JOSEPH PEÑA, a/k/a JOSEPH SANCHEZ,**

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Daniel E. Burrows, Special Assistant U.S. Attorney for the District of Colorado, and Defendant, Jeramyah Gonzalez, personally and by counsel, Thomas R. Ward, submit the following plea agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

1. *Defendant Gonzalez's Obligations*

Defendant Gonzalez agrees to plead guilty to Count 7 of the Indictment, charging a violation of 18 U.S.C. § 1028A(a)(1) (2012), aggravated identity theft. However, pursuant to Fed. R. Crim. P. 11(a)(2), Defendant Gonzalez reserves the right to appeal the Court's rejection of the parties' previously offered plea agreement (*see* Courtroom Mins., Feb. 13, 2019, ECF No. 105).

Defendant Gonzalez also agrees to pay restitution in the following amounts:

- $9757 to the U.S. Department of Education,

**COURT EXHIBIT 1**

- $7734.98 to Community College of Denver (CCD), and
- restitution to A.M. or any other victims in amounts to be determined by the Court.[1]

Such restitution shall be solely the responsibility of Defendant Gonzalez, and such responsibility shall exist independent of any restitution order which may exist (now or in the future) with regard to any of his co-defendants in this case.[2]

Finally, Defendant Gonzalez reasserts the reservation stated above but otherwise agrees to waive his appellate rights, as detailed below.

2. *The Government's Obligations*

The United States consents to Defendant Gonzalez entering a conditional plea under Fed. R. Crim. P. 11(a)(2).

The United States also agrees, under Fed. R. Crim. P. 11(c)(1)(A), that, at sentencing, it will move to dismiss Count 6 of the Indictment (the only other count in which Defendant Gonzalez is charged) with prejudice.

---

[1] A.M. is one of the persons whose personally identifiable information (PII) Defendant Gonzalez stole and used to sign up for student aid. A.M. has had money taken from him through collections and tax refund garnishment to pay back money Defendant Gonzalez received in A.M.'s name. Based on information presently available to them, the parties believe that amount was no more than $1369.57. The parties also believe that, as of the date of the Indictment, no other victims had been affected by collections or tax refund garnishments. Nonetheless, the parties lack sufficient information at the present time to fix restitution amounts to all victims. Furthermore, the parties note that, under 18 U.S.C. § 3663(b)(6) (2012), identity theft victims may be compensated for "the value of time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense."

[2] The purpose of this provision is for Defendant Gonzalez to avoid joint and several liability for the entire scheme charged in the indictment. The parties have, as part of this plea agreement, attempted to parcel out Defendant Gonzalez's individual responsibility.

3.  *Defendant Gonzalez's Waiver of Appeal*

Defendant Gonzalez is aware that 18 U.S.C. § 3742 (2012) affords him the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, Defendant Gonzalez knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it fits within the Fed. R. Crim. P. 11(a)(2) reservation in Part I.1 above or meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction or (2) the government appeals the sentence imposed. If any of these two criteria apply, Defendant Gonzalez may appeal on any ground that is properly available in an appeal that follows a guilty plea.

Defendant Gonzalez also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255 (2012)). This waiver provision does not prevent Defendant Gonzalez from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) he should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute, (2) he was deprived of the effective assistance of counsel, or (3) he was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

(1) Defendant Gonzalez knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person; and

(2) he transferred, possessed or used such means of identification during an in

relation to a particular enumerated felony (in this case, mail fraud). See § 1028A(a)(1).

### III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of § 1028A(a)(1) is: two years' imprisonment and not more than a $250,000 fine;[3] not more than one year of supervised release; a $100 special assessment fee; and mandatory restitution.[4]

If supervised release is imposed, a violation of any condition of supervised release may result in a separate prison sentence and additional supervision.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

---

[3] Section 1028A(a)(1) is silent on a fine. At least one judge has consistently applied the fine provisions of 18 U.S.C. § 3571 (2012) to aggravated identity theft convictions, see *United States v. Villar*, No. 09 Cr. 435-01(RWS), 2013 WL 2436559, at *5 (S.D.N.Y. June 5, 2013); *United States v. Guvercin*, No. 10 Cr. 1206-01(RWS), 2013 WL 466429, at *5 (S.D.N.Y. Feb. 7, 2013), and the parties are unaware of any court that has held that a fine may not be imposed for a § 1028A(a)(1) violation. Curiously, though, the guidelines manual is silent on how the fine table should be applied to a § 1028A(a)(1) conviction. See U.S. Sentencing Guidelines Manual § 2B1.6 (U.S. Sentencing Comm'n 2018) (failing to establish an offense level for aggravated identity theft). But cf. id. § 2K2.4 application note 7 (stating, with regard to convictions under statues that are analogous to § 1028A, that "[t]he Commission has not established a fine guideline range for the unusual case in which there is no conviction for the underlying offense, although a fine is authorized under 18 U.S.C. § 3571").

[4] The parties agree, under 18 U.S.C. § 3663A (2012), that although it is unclear whether aggravated identity theft qualifies for mandatory restitution, an offense against property under Title 18, United States Code (i.e., mail fraud), gave rise to this plea agreement. Therefore, the mandatory restitution provisions of § 3663A apply.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that Defendant Gonzalez will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553 (2012), additional facts may be included below that are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and that are relevant to the Court's guideline computations, to other § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in 2012.

The parties agree as follows:

Defendant Gonzalez became aware of a scheme to fraudulently obtain student aid funds from the U.S. Department of Education by signing up for college in someone else's name, but directing the aid money to oneself. Community colleges were generally the best schools for this scheme because they had open enrollment (and, thus, there was minimal admissions paperwork and no risk of not getting in) and conducted online courses (so a person could register attendance by just checking in online a few times[5]).

At the time Defendant Gonzalez heard about this scheme, he was working at a

---

[5] The online check-ins were necessary because the Department of Education disbursed student aid funds to the school rather than the student, and the school would generally not pass the funds on to the student until it confirmed he was actually attending.

glass company. In cooperation with another person at that company, Defendant Gonzalez unlawfully obtained PII related to other employees, culled from their employee files. That PII included names, birthdates, and Social Security numbers. Defendant Gonzalez later did the same at another place where he worked. Defendant Gonzalez intended to (and did) use all this information to execute the fraud scheme described above. Among his uses of that PII was his use of the name, Social Security number, and birthdate of T.B., as charged in Count 7 of the Indictment.

Using the PII he had taken from work, Defendant Gonzalez signed up for classes at CCD. He also applied for student aid. However, in enrolling and applying for student aid, Defendant Gonzalez would not list the students' true contact information. Rather, he would falsely list mailing addresses, phone numbers, and e-mail addresses that were his or to which he had access. From 2012 to 2014, Defendant Gonzalez applied for and was awarded aid in the names of at least three different persons whose PII he had stolen (including T.B.).

The process for disbursing federal financial aid was as follows: the Department of Education would disburse funds directly to the college where a particular student who was awarded aid was enrolled. Once the money was received, the college would apply the funds to tuition, fees, and any other outstanding charges on the student's account. Any money remaining was then "refunded" to the student.

CCD used a company called Bank Mobile to distribute aid "refunds." Specifically, the money was placed in an account with Bank Mobile in the student's name. Bank Mobile would then mail a debit card to the student. Through this card, the student could access the "refunded" money. The award of aid in the names of Defendant Gonzalez's straw students resulted in the creation of Bank Mobile accounts in their names. This in turn resulted in Bank Mobile mailing debit cards to Defendant Gonzalez in the names of

those straw students.

Defendant Gonzalez spent the money he received on his own wants and needs. Altogether, $24,441 was disbursed to CCD for Defendant Gonzalez's straw students.[6] This ultimately resulted in him receiving and spending $10,383.70 as proceeds of his fraud. The parties stipulate that the former number is the intended loss for sentencing guideline purposes.

## VI. ADVISORY GUIDELINE COMPUTATION AND § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the U.S. Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the U.S. Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A. The base guideline is U.S. Sentencing Guidelines Manual § 2B1.6 (U.S. Sentencing Comm'n 2018). There is no base offense level—"the guideline sentence is the term of imprisonment required by statute" (i.e., two years). *Id.*
B. There are no applicable specific offense characteristics.
C. There are no victim-related, role-in-offense, obstruction or multiple-count adjustments, nor is there any adjustment for acceptance of responsibility. *See id.*

---

[6] The difference between this amount and the restitution amounts is the result of the "return to Title IV" process whereby, based on a complicated formula, the school returns a portion of disbursed aid to the Department of Education for students who drop out, withdraw, or fail to attend a sufficient number of class sessions.

D. A criminal history computation is unnecessary. *See id.* Nonetheless, the parties believe, based on information currently available to them, that Defendant would fall into Category IV if criminal history were relevant.

E. The career offender, criminal livelihood, and armed career criminal adjustments would not apply. *See id.*

F. The advisory guideline range resulting from these calculations is two years of imprisonment (the term of imprisonment required by statute).

G. The guidelines do not establish a fine range for this offense. *Cf. id.* § 2K2.4 application note 7 (stating, with regard to convictions under statues that are analogous to § 1028A, that "[t]he Commission has not established a fine guideline range for the unusual case in which there is no conviction for the underlying offense").

H. Pursuant to *id.* § 5D1.2, if the Court imposes a term of supervised release, that term is one year.

I. *Id.* § 5E1.1 requires a restitution order for the full amount of the victim's losses, consistent with § 3663A.

The parties understand that although the Court will consider their estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties

regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form) within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any § 3553 factor.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor Defendant Gonzalez has relied or is relying on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 4/11/19

Jeramyah Gonzalez
Defendant

Date: 4/11/19

Thomas R. Ward
Attorney for Defendant

Date: 4/11/19

_____
Daniel E. Burrows
Special Assistant U.S. Attorney