IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00389-RBJ

UNITED STATES OF AMERICA,

Plaintiff,

v.

3.   JERAMYAH GONZALEZ, a/k/a JOSEPH PENA, a/k/a JOSEPH SANCHEZ,

Defendant.

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America files its response to defendant Gonzalez's Motion for Compassionate Release, ECF 191. This 38-year old defendant argues that he qualifies for compassionate release after serving **approximately one half** of his sentence because he suffers from Type 2 diabetes, obesity, hypertension and sleep apnea  *Id.* at 15-19.

While Type 2 diabetes and obesity place individuals at an increased risk of severe illness from COVID-19, hypertension and sleep apnea do not.[1]  Moreover, this defendant's diabetes and obesity have significantly improved during his incarceration, as detailed more fully below.  Nonetheless, the defendant argues that the Court should reduce his sentence to time served and impose 10 months of home confinement as a

---

[1] CDC guidance states that hypertension **might** pose an increased risk for severe illness from COVID-19, and does not address sleep apnea at all.  *See* www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

1

condition of supervised release.  ECF 191 at 32.

The Court should deny the defendant's request for compassionate release because 1) his young age lessens his risk; 2) the Bureau of Prisons has taken appropriate measures to mitigate the risk of COVID-19, as evidenced by the fact the defendant has not contracted the virus during the approximately nine months of this pandemic; and 3) releasing the defendant from prison after serving **approximately one half** of his original sentence would undermine the sentencing goals set forth under 18 U.S.C. § 3553(a).

## BACKGROUND

The defendant pled guilty to Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, for stealing the personal identifying information of certain of his co-workers, using that information to apply for federal student aid funds, and then using those funds for personal expenses.  The defendant, along with four of his family members, engaged in this fraudulent conduct for over two years.  ECF 135 at 5-7 (Plea Agreement).  All told, the family obtained approximately $147,000 from the U.S. Department of Education, the State of Colorado, and two Colorado community colleges.  The defendant was held individually responsible for approximately $17,500 of that amount. *Id.* at 1-2 and footnote 2.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In his motion, the defendant sets forth the steps he has taken to exhaust his administrative remedies as required by the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The government agrees with the defendant that he has exhausted his administrative remedies.

## ARGUMENT

### I.   BOP Response to COVID-19 and Facts Specific to FCI Englewood

By now, this Court is fully aware of the nationwide measures taken by BOP to maintain the safety and security of Bureau of Prisons institutions during this pandemic.[2]

Attached to this filing as Exhibit A is the Declaration of N. Thomas, Executive Assistant of FCI Englewood in which she sets forth these nationwide measures and details the specific steps taken at FCI Englewood to combat the virus at that facility. *Id.* at Pages 3-17.

In summary, the measures taken by BOP in general, and at FCI Englewood specifically, have been effective in maintaining the safety of inmates and staff at the facility where the defendant is housed. With respect to this defendant in particular, he has not contracted COVID while confined at FCI Englewood during the approximately 9 months of this pandemic. While this fact does not guarantee he will not contract the virus in the future, it is strong evidence that the procedures implemented by FCI Englewood have been effective in keeping the defendant virus-free to date.

### II.   Legal Standard for Compassionate Release

A court may grant a defendant's motion for a reduction of sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the

---

[2] https://www.bop.gov/resources/news/20200319_covid19_update.js;
https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf;
www.bop.gov/coronavirus/index.jsp

burden to show circumstances meeting the test for compassionate release. *United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (unpublished).

As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. June 7, 2019) (citations omitted). Indeed, "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia,* 954 F.3d 594, 597 (3rd Cir. 2020).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[3]

The Sentencing Commission's policy statement provides four categories of "extraordinary and compelling reasons" that warrant a reduction in sentence. First, a

---

[3] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

4

defendant with a terminal medical condition or who is suffering from a "serious medical condition" that "substantially diminishes" the defendant's ability to provide self-care and from which he is not expected to recover may be released. U.S.S.G. § 1B1.13 cmt. 1(A). Second, a defendant who is at least 65 years old, is experiencing serious physical or mental deterioration, and has served at least 10 years or 75% of his sentence may be released. *Id.* cmt. 1(B). Third, family circumstances may also warrant compassionate release in the event of "the death or incapacitation of the caregiver of the defendant's minor child or minor children [or the] incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. 1(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D). https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

### III.  The Defendant's Eligibility for Placement on Home Confinement by BOP

The defendant notes that BOP advised him that he was ineligible for a reduction in sentence to home confinement due to his public safety factor (PSF) based on his prior conviction for indecent exposure. ECF 191 at 9.

Since the filing of the defendant's motion, the defendant has obtained an Order of Expungement of Records Juvenile "JD" Case. *See* ECF 191 at 9 n. 6 (referring to the pendency of his petition for expungement). Defendant stated it was unknown whether the expungement of the record would alter BOP's designation of his prior sex offense as a PSF.

BOP informed undersigned counsel that this Order does not affect BOP's designation of the PSF. Program statement 5100.08, Inmate Security Designation and

Custody Classification[4] provides that a conviction is not required for placement of a PSF if the presentence investigation report or other official document clearly indicates the behavior occurred.  Only if a case was dismissed will a PSF not enter.

This PSF was added onto the defendant's records due to a description of the sexual offense contained in his PSR.  The fact that his finding of delinquency is now expunged does not negate the fact that the offense occurred – the court did not overturn the conviction - rather the expungement just makes it more difficult for non-law enforcement entities to access the information.

Accordingly, the defendant remains ineligible for placement on home confinement within BOP's administrative procedures.

## IV.     Defendant's Motion Should be Denied

Currently, the Department of Justice is taking the position that the presence of one of the COVID-19 risk factors that are specifically enumerated by the CDC and that is confirmed by BOP medical records meets the threshold requirement of presenting an "extraordinary and compelling" reason under the First Step Act.[5]  The defendant's

---

[4] https://www.bop.gov/policy/progstat/5100_008.pdf at Pages 50-51.

[5] The law does not require the Court agree with the Department of Justice's position. *See e.g., United States v. Korn,* 2020 WL 1808213, at *6-8 (W.D.N.Y. Apr. 9, 2020) (coronary artery disease did not amount to an extraordinary and compelling reason); *United States v. Roberts*, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (denying to compassionately release HIV-positive defendant housed at New York City's Metropolitan Correctional Center (MCC), which had 10 confirmed COVID-19 cases – four inmates and six staff – as of the date of the court's opinion); *United States v. Hays*, 2020 WL 1698778 (S.D. Ala. Apr. 7, 2020) (holding concerns about contracting COVID-19 based on defendant's age, anemia, and allegedly unsanitary conditions at her facility were not extraordinary and compelling reasons justifying her release); *United States v. Clark*, 2020 WL 1557397, at *1 & *4 (M.D. La. Apr. 1, 2020) (defendant's high blood pressure and high cholesterol are not serious medical conditions and "the fear of contracting a communicable disease" proves insufficient to justify a sentence modification).

medical records confirm his Type 2 diabetes diagnosis and obesity. ECF 191 at 15-18. However, the defendant admits that both of these conditions have improved while in prison. Specifically, as of May of this year, the defendant had lost 40 pounds and his BMI reduced from 41.1 at the time of his presentence report, to 35.1. His diabetes improved as well. The BOP physician noted, "stopped insulin, exercise and diet and his sugars remained low. **Off all medications now.** Sugars on occasion up to 180 but no sugars in the 60's. Feels well, weight is stable." ECF 191 at Ex. 7, p. 1 (emphasis added). The BOP physician also examined the defendant on June 16 and August 4, 2020, and there is no indication in these records that it was necessary for the defendant to resume insulin. *See* Exhibit B. Accordingly, while the defendant's obesity currently satisfies the threshold requirement of presenting an "extraordinary and compelling" reason for release under the First Step Act, it is not clear that his diabetes diagnosis does, as it is currently under control. *See United States v. Edington,* No. 19-cr-00174-REB, 2020 WL 2744140, at *4 (D. Colo. May 27, 2020) (denying a reduction in sentence to a 38-year old defendant who suffers from high blood pressure (which is controlled by medication), had served less than half of her sentence, and whose age did not place her "in a high risk age category.").

      The Department of Justice is not taking the position that the mere satisfaction of a threshold requirement should result in the granting of compassionate release. Instead, the Court may also take into account the defendant's young age (38)[6], and

---

[6] Eight out of ten COVID-19 deaths in the United States have been adults 65 years old and older. CDC, *COVIDView*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last accessed July 20, 2020).

should balance the precautions that the BOP is taking to mitigate the risk of COVID-19, and the sentencing factors set forth under 18 U.S.C. § 3553(a).

The decision to grant or deny a request for reduction in sentence remains discretionary. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Even where defendants have shown the presence of COVID-19 risk factors, courts have held that such factors do not mean the inmate is automatically entitled to a reduction in sentence. This is true even for defendants residing at facilities with confirmed COVID-19 cases.

For example, in *United States v. Korn*, the court denied the defendant's request for compassionate release notwithstanding the fact that (1) at least 40 COVID-19 cases had already been confirmed at his facility (Butner), and (2) the defendant suffers from a serious heart condition that made him more susceptible to COVID-19. *United States v. Korn*, No. 15-CR-81S & 11—CR-384S, 2020 WL 1808213, at *6-8 (W.D.N.Y. Apr. 9, 2020) (noting court had already considered defendant's medical condition when it imposed his sentence and when it denied his motion for a sentence reduction under 28 U.S.C. § 2255). In *Korn*, the court held that although "Korn's medical conditions may place him at increased risk of contracting and succumbing to COVID-19 … the mere possibility of contracting a communicable disease such as COVID-19, without any showing that [BOP] will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." *Id*. at *6; *see also*, *e.g.*, *United States v. Roberts,* No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (stating appropriate relief for defendant with HIV housed at MCC was a temporary release from custody, not

compassionate release); *United States v. Hays*, No. 18-00088-KD-N, 2020 WL 1698778 (S.D. Ala. Apr. 7, 2020) (holding concerns about contracting COVID-19 based on defendant's age, medical condition, and allegedly unsanitary conditions at her facility, FCI Aliceville, were not extraordinary and compelling reasons justifying her release); *United States v. Credidio,* No. 19 Cr. 111 (PAE), 2020 WL 1644010, at *1 (S.D.N.Y. Apr. 2, 2020) (noting at least four other inmates had COVID-19, but still declining to release defendant from MCC); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397 at *1, 4 (M.D. La. Apr. 1, 2020) ("the fear of contracting a communicable disease" proves insufficient to justify a sentence modification for 67-year-old inmate with high blood pressure, high cholesterol, and sleep apnea).

In sum, to release the defendant under the circumstances would be to sanction the release of untold numbers of other federal prisoners who are in similar if not worse circumstances.

**V.    The Court Should Deny Defendant's Motion Because Granting his Release Would Undermine the Goals of Criminal Sentencing.**

The statute requires the Court to consider whether releasing the defendant is consistent with the factors set forth at 18 U.S.C. § 3553(a).   18 U.S.C. § 3582(c)(1)(A). Relief under § 3582 is a discretionary remedy that should balance the risks of COVID against the likelihood that releasing the defendant will undermine the goals of criminal justice.  Order Denying Motion for Compassionate Release, *United States v. McCaflin*, 1:17-cr-00168-CMA, ECF No. 129 (July 20, 2020); *United States v. Batista,* No. 19-cr-2-JFK, 2020 WL 3249233 (S.D.N.Y. June 16, 2020).  Here, the Court should deny the defendant's motion because BOP has mitigated the risks and because the sentencing factors under § 3553(a) counsel against relief for this defendant who has served **approximately one half** of his sentence.

1. **Factors set forth at 18 U.S.C. § 3553(a) weigh strongly in favor of denying the defendant's motion.**

Considering the factors under Section 3553(a), the defendant's motion should also be rejected. The defendant, along with his wife and various members of her family, participated in a scheme to fraudulently obtain student aid funds from the U.S. Department of Education by stealing the personally identifiable information of some of the defendant's co-workers and applying for aid in their names. The defendant and his family members then used those funds for personal expenses. While the fraud proceeds were allocated specifically to each defendant, it is notable that the defendant and his family shared in the approximately $147,000 fraudulently obtained from the scheme. ECF 173 at 6-7.

The defendant has been arrested numerous times, commencing when he was a teenager. The instant offense is his third felony conviction as an adult, with prior convictions for theft and third degree assault. ECF 173 at 11, ¶¶ 43 and 44. The government acknowledges that the defendant incurred his two prior felonies when he was much younger (18 and 21 years of age). However, he was noncompliant with the terms of his supervision, resulting in his admission of violations of his supervision and receiving jail time in almost all of his cases. The defendant scored in Criminal History Category II, unlike his co-defendants, all of which were in Category I, which accounts in large part for the distinction in their sentences. *See* ECF 191 at 27 (referencing the length of his sentence as compared to his co-defendants). Deterrence is certainly more of a consideration with defendants with prior criminal history. In sum, the defendant's sentence in the instant case was designed to punish him for this offense conduct, deter him and others from future fraudulent conduct, and to protect the community, and those goals will not be served by an unwarranted sentence reduction now.

The defendant argues that he has no disciplinary infractions while in prison and that this financial crime is not "aggravated." ECF 191 at 30, 26. The court found those same arguments unpersuasive in *United States v. Edington,* No. 19-cr-00174-REB, 2020 WL 2744140, at *4 (D. Colo. May 27, 2020). There, the 38-year old defendant was convicted of a stealing checks from the mail and altering them so she could cash them. The court held that while the fact the defendant had not had a disciplinary infraction during her five months of incarceration was "admirable," it was insufficient to "merit her early release." *Id.* at 5. As to whether the defendant posed a danger to the community if granted early release, the court held that "while it is true that her offenses are not crimes of violence and do not involve narcotics, the concept of what constitutes a danger to the community 'may, at least in some cases, encompass pecuniary or economic harm.'" *Id.* (citing cases). The court also found that the defendant's history of failing to comply with the terms of probation did "not inspire confidence that a sentence of less than half the court originally imposed is sufficient to further the goals of sentencing in her case." *Id.* Here, the defendant made easy money by simply helping himself to the personal identifying information of his co-workers. It is not a stretch to believe he may resort to criminal activity once release, especially given the difficult state of our current economy.

Finally, with respect to the defendant's claim his pre-existing medical conditions "make him significantly more vulnerable to severe complications including death should he contract COVID-19," *id.* at 1, this fact remains true if the defendant is released and as he states, returns to his employment as a welder and pipe fitter where he will be exposed to the general public. *Id.* at 27.

11

Accordingly, the factors set forth at 18 U.S.C. § 3553(a) outweigh any "extraordinary and compelling reasons" presented by the current pandemic.  *See United States v. Ebbers*, 432 F.Supp.3d 421, 431 (S.D.N.Y. Jan. 8, 2020) (warning against ordering compassionate release in circumstances where ordering release would "undermine the goals of the original sentence").  By releasing the defendant now, the Court would not promote respect for the law, provide just punishment, or afford adequate general or specific deterrence. It would also undermine the public's confidence in the criminal justice system.  Instead, it would be granting the defendant a significant reduction in sentence based on unquantified risk that he might face hospitalization *if* infected with COVID-19.

Compassionate release is an extraordinary and rare remedy that the defendant has not and cannot meet his burden to justify.  Accordingly, the United States respectfully submits that the Court should deny the defendant's motion.

    Respectfully submitted,

    JASON R. DUNN
    United States Attorney

    By:  *s/ Martha A. Paluch*
    MARTHA A. PALUCH
    Assistant United States Attorney
    United States Attorney's Office
    1801 California Street, Suite 1600
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    Email: Martha.paluch@usdoj.gov
    Attorney for the United States

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of November, 2020, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

      By: *s/Martha A. Paluch*
MARTHA A. PALUCH
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email: Martha.paluch@usdoj.gov
Attorney for the United States